IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Income Tax

ARTHUR B. CURTIS                  )
and CATHY L. CURTIS,            )
                                         )
           Plaintiffs,              )     TC-MD 210413N
                                         )
           v.                         )
                                         )
DEPARTMENT OF REVENUE,     )
State of Oregon,                  )
                                         )
           Defendant.             )    **DECISION**

Plaintiffs appealed Defendant's Notice of Assessment, dated September 23, 2021, for the

2017 tax year. A trial was held on June 16, 2022, in the courtroom of the Oregon Tax Court.

Mary J. Sykes, an Oregon CPA, appeared on behalf of Plaintiffs. Arthur B. Curtis (Curtis)

testified on behalf of Plaintiffs.[1] Rodney King, conference officer, appeared on behalf of

Defendant. Plaintiffs' Exhibits 1 to 6 and Defendant's Exhibits A to I were received without

objection. The parties reached an agreement on several items and filed a partial stipulated

agreement on June 29, 2022, that is incorporated into this decision.

## I. STATEMENT OF FACTS

Plaintiffs owned a trucking business, Rocky Road LLC (Rocky Road), during the 2017

tax year. Rocky Road hauled loads for individuals, businesses, and contractors in the Douglas

County area. Curtis did all the driving, bookkeeping, and scheduling, and performed most of the

repairs on the vehicles and machinery involved in the business. Rocky Road had no employees.

Cathy Curtis would, at times, assist with errands and administrative tasks, but the business was

---

[1] Unless otherwise noted, facts stated in this decision are from Arthur B. Curtis' testimony.

primarily run by Curtis. Defendant audited Plaintiffs' 2017 personal income tax return, including the Schedule C for Rocky Road. Defendant disallowed some of the business deductions claimed by Plaintiffs related to fuel and transportation, travel away from home, and other expenses, including a cell phone, tablet, and home internet.

A.      *Vehicle Expenses—Crew Cab*

Plaintiffs claimed depreciation of $6,518 for a 2017 Chevy Crew Cab (Crew Cab). (*See* Ptfs' Ex 1.) Curtis testified that the Crew Cab was used solely for business and Defendant agreed to allow a total of 2,710 business miles on the Crew Cab for the purpose of depreciation.

Plaintiffs also claimed a total of $861 in fuel costs with $619 allocated to the Crew Cab, and $242 allocated to "equipment." (Ptfs' Ex 1.1.) Curtis testified that "equipment" refers to fuel he purchased for a Kubota backhoe and steam cleaner that were used in his business. Plaintiffs provided a spreadsheet detailing those fuel purchases and listing odometer readings for the Crew Cab that correspond to the 2,710 miles claimed. (*Id.*) Plaintiffs provided receipts of fuel purchases corresponding to the amounts listed on their spreadsheet. (*See* Ptfs' Ex 1.1.1-1.1.6.) Defendant disallowed those costs at audit, finding there was no way to discern which gas receipts were for the Crew Cab as opposed to other purposes. (Def's Ex A at 4-5.[2]) At audit, Defendant declined to accept Plaintiffs' mileage log for the Crew Cab due to discrepancies with other records. (*See id.*)

/ / /

/ / /

---

[2] For instance, Plaintiffs purchased $33.012 gallons of fuel on March 21, 2017, for a total price of $89.76. (Ptfs' Ex 1.1.3.) They allocated $54.38 to equipment and $35.38 to the Crew Cab, but the basis for that allocation is unclear from the receipt. (*See* Ptfs' Ex 1.1.)

DECISION  TC-MD 210413N

In 2017, Plaintiffs also had a Jeep driven primarily by Cathy Curtis, but occasionally used to run errands and pick up parts for the business. They did not claim any business expenses associated with the Jeep because its use was primarily personal.

B.      *Motorhome Depreciation and Travel Expenses*

Plaintiffs claimed expenses associated with four business trips in their Monaco Motorhome in 2017. They claimed depreciation for the motorhome, campground fees, and gas. (Ptfs' Ex 2, 2.4, 2.6, 2.8.) Curtis testified that Plaintiffs also used the motorhome for personal trips on 15 days in 2017. (*See also* Def's Ex G-1 (reflecting 1,001 personal miles in 2017).)

Each business trip began and ended at Plaintiffs' home. In February 2017, Plaintiffs traveled to and from Fort Bragg, California, over eight days to view two trucks Curtis found advertised for sale on Craigslist. (Ptfs' Ex 2.1-2.3.) In Fort Bragg, Curtis viewed a truck for sale but discovered water in the oil and chose not to purchase it. On the way back, Plaintiffs stopped in Coquille, Oregon, to look at a 1998 Kenworth T800 truck. (Ptfs' Ex 2.3.) The owner of that truck did not possess service records and the truck was not in good shape, so Curtis declined to purchase it. Plaintiffs paid campground fees totaling $335 on the trip. (Ptfs' Ex 2.4, 2.6.)

In June 2017, Plaintiffs traveled to Utah and Colorado over 15 days. Curtis testified that the trip's purpose was to evaluate whether it was feasible for Plaintiffs to relocate the business to Colorado. Plaintiffs have family in Colorado who wished for them to move there. From June 9 until June 14, Plaintiffs traveled from Oregon to Alamosa, Colorado, where their family lived. Along the way, Plaintiffs stopped in Salt Lake City, Utah, on June 11 to spend the day with an aunt and two cousins who lived there. From June 14 until June 20, Plaintiffs stayed with their family in Alamosa and traveled around the area to investigate relocating the business. (*See* Ptfs' Ex 2.7.) Curtis testified that his cousin introduced him to some people, and they discussed

whether another trucking business was needed in the area. Plaintiffs did not provide a log or any other documents pertaining to those meetings. Plaintiffs incurred costs for campgrounds and gas totaling $809 on the trip. (*See* Ptfs' Ex 2.8 (total of marked items on bank statement).)

In August 2017, Plaintiffs took a four-day trip to Sacramento, California, to look at a truck up for auction. (*See* Ptfs' Ex 2.9[3]; Def's Ex G at 2.) In October 2017, Plaintiffs took a three-day trip to Bend, Oregon, to look at a trailer. (*See* Ptfs' Ex 2.10[4]; Def's Ex G at 2.)

C.      *Other Expenses*

Plaintiffs originally claimed $3,126 in "Other Expenses." (Compl at 10.) At audit, Defendant allowed $288 for a former business owner's phone line and denied the remaining expenses for cell phones, tablet, and internet service. (Def's Ex A at 8.) At trial, Plaintiffs claimed $2,296 in business expenses for a cell phone line, a former business owner's phone line, a tablet, and internet service. (Ptfs' Ex 4.1.[5])

1.      *Cell phone and tablet*

Plaintiffs claimed $1,198 for Curtis' cell phone and $111 for a tablet. (Ptfs' Ex 4.1.) Plaintiffs also have a personal landline and a cell phone line for Cathy Curtis, neither of which they claim for deduction.

Curtis' cell phone expense is comprised of $770 for the plan charge and $428 for the phone line itself. (Ptfs' Ex 4.1.) Curtis testified that he uses his cell phone primarily for business and 89 percent of calls to his cell phone are business calls. To support that percentage,

---

[3] Plaintiffs provided a map of Ritchie Brows Auctioneers in Dunnigan, California, and a Craigslist posting for a 2012 Kenworth T800 showing a posting date of "2017-01-07" with "Sacramento" handwritten at the bottom.

[4] Plaintiffs provided a Craigslist posting for a 1970 Cozad Low boy, dated October 2017.

[5] Curtis testified that he prepaid one month in 2016 so it was not included in the 2017 return.

he provided one month of cell phone call logs in which he marked calls as personal, business, or unknown.  (Ptfs' Exs 4.8–4.10.)

Plaintiffs claimed $111 for a tablet.  (Ptfs' Ex 4.1.)  Curtis testified that he installed QuickBooks software on the tablet, allowing him to check prior prices for repeat customers.

2.    *Internet*

Plaintiffs claimed $644 for internet service in 2017.  (Ptfs' Ex 4.1.)  Curtis used the internet to look up contractors' licenses, and to research vehicle parts and repairs, among other things.  Plaintiffs also claimed expenses for a home office using a Form 8829, which included utilities totaling $2,398.  (Def's Ex D at 9 (Form 8829).)  Defendant did not adjust those expenses but denied Plaintiffs' internet expense reasoning that it should already have been included in the home office expense calculation or, alternatively, that Plaintiffs failed to show that they incurred any business-related charges that would not have already been incurred for personal use.  (*See* Def's Exs A at 7, B at 4, 10.)

## II.  ANALYSIS

The issue is whether Plaintiffs may deduct certain business expenses for the 2017 tax year.  The court looks to provisions of the Internal Revenue Code (IRC) to determine Plaintiffs' taxable income.  *See* ORS 316.007; ORS 316.048.[6]  As the parties seeking affirmative relief, Plaintiffs bear the burden of proof by a preponderance of the evidence.  *See* ORS 305.427; *see also INDOPCO, Inc. v. Comm'r*, 503 US 79, 84, 112 S Ct 1039, 117 L Ed 2d 226 (1992) (deductions are "a matter of legislative grace" so taxpayers bear the burden of proving entitlement to any deduction claimed).

---

[6] The court's references to the Oregon Revised Statutes (ORS) are to 2015.  The court's references to the IRC are to 2017.  ORS 316.012(2).

DECISION  TC-MD 210413N

IRC section 162(a) allows a deduction for certain ordinary and necessary business expenses. "To be 'necessary[,]' an expense must be 'appropriate and helpful' to the taxpayer's business. * * * To be 'ordinary[,]' the transaction which gives rise to the expense must be of a common or frequent occurrence in the type of business involved." *Boyd v. Comm'r*, 83 TCM (CCH) 1253 WL 236685 at *2 (2002) (internal citations omitted). Deductions for personal, living, or family expenses are generally disallowed under IRC section 262, unless expressly allowed elsewhere in the IRC.

In general, if an expense is deductible, but the taxpayer is unable to fully substantiate it, the court is permitted to make an approximation of the allowable amount. *Cohan v. Comm'r*, 39 F2d 540, 543-44 (2nd Cir 1930). However, that estimate must have a reasonable evidentiary basis. *Vanicek v. Comm'r*, 85 TC 731, 743 (1985). Certain listed expenses are subject to more stringent substantiation requirements—IRC section 274(d) supersedes the *Cohan* rule and requires taxpayer to substantiate each element of such expenses "by adequate records or by sufficient evidence corroborating the taxpayer's own statement * * *." IRC § 274(d). This heightened standard of proof known as "strict substantiation." Deductions for traveling expenses and the use of listed property such as passenger vehicles are subject to strict substantiation requirements. IRC § 274(d); IRC 280F(d)(4)(A).

A.      *Vehicle Expenses—Crew Cab*

Expenses associated with the use of a passenger vehicle are subject to strict substantiation. That means that taxpayer must provide adequate records substantiating 1) the amount of the expense, 2) the time and place of travel, and 3) the business purpose of the expense. IRC § 274(d). At trial, Defendant stipulated to a depreciation deduction of $6,518 for the Crew Cab. *See* IRC § 167(a)(1) (permitting depreciation deduction for ordinary wear and

DECISION  TC-MD 210413N

tear for property "used in a trade or business").  Regarding fuel expense, Plaintiffs' spreadsheet, detailing the times and amounts of fuel purchased for the Crew Cab, matches the 2,710 miles that Plaintiffs claimed and Defendant accepted.  Plaintiffs provided receipts for each gas purchase listed on the spreadsheet.[7]  Curtis testified that he used the Crew Cab exclusively for business purposes—to pick up parts for his dump truck that were too big to fit in a regular vehicle.[8]  Based on that evidence, the court finds that Plaintiffs have adequately substantiated $619 in fuel costs associated with the business use of the Crew Cab.

B.      *Motorhome Depreciation and Travel Expenses*

"[N]o deduction * * * shall be allowed with respect to the use of a dwelling unit which is used by the taxpayer during the taxable year as a residence."  IRC § 280A(a).  A " 'dwelling unit' includes a house, apartment, condominium, mobile home, boat, or similar property * * *."  IRC § 280A(f)(1)(A).  A "mini-motorhome" was found to be a "dwelling unit" as it "provides shelter and accommodations for eating and sleeping" like the other dwelling units enumerated in IRC section 280A.  *Haberkorn v. Comm'r*, 75 TC 259, 261 (1980).  A dwelling is a residence if it is used for personal purposes more than 14 days in a year.  IRC § 280A(d)(1)(A); *see also Dunford v. Comm'r*, 106 TCM (CCH) 130, WL 4436475 at *8 (2013) (taxpayers lived in their motor home for more than 14 days during each of the years at issue, therefore it was a residence).  Plaintiffs used the motorhome for more than 14 days in 2017, thus no deduction is allowed unless an exception applies.

---

[7] There is one discrepancy on the spreadsheet.  It lists a fuel purchase of $61.59 on February 19, whereas the corresponding receipt is dated February 12.  The discrepancy appears to be a typographical error.

[8] Plaintiffs' log shows entries consistent with his stated business purpose *e.g.*, "weld," "parts," "Lowe's," and "A-1 Auto."  (Ptfs' Exs 1.1.7-1.1.18.)

IRC section 280A(c) provides an exception for certain business uses of a dwelling unit. A deduction may be allowed for a portion of the dwelling unit that is exclusively used on a regular basis as taxpayer's principal place of business or as a place where taxpayer meets with patients, clients, or customers in the normal course of business. IRC § 280A(c)(1)(A)-(B). Additionally, a separate structure used for business that is not attached to the dwelling unit may qualify. IRC § 280A(c)(1)(C). Plaintiffs did not allege that the motorhome qualified for any exception. Accordingly, the depreciation deduction on the motorhome must be denied.

Traveling expenses that are reasonable and necessary to a taxpayer's business, including meals, lodging, and other expenses incident to travel, are deductible. Treas Reg § 1.162-2(a). However, traveling expenses are subject to strict substantiation. IRC § 274(d). Plaintiffs' expenses of $335 incurred for campgrounds on the trip to Fort Bragg, California are allowed. Bank statements adequately substantiated the dates and amounts of the expenses. Plaintiffs' itinerary, the contemporaneous Craigslist printouts for trucks viewed, and Curtis' sworn testimony established the business purpose of the trip.

The expenses incurred on Plaintiffs' trip to Utah and Colorado are not allowed. If a trip mixes personal and business activities, expenses are deductible only if the trip is primarily related to the taxpayer's trade or business. Treas Reg § 1.162-2(b)(1). The trip was 15 days long and, on six of those days, Curtis met with people to determine whether to relocate his business. Plaintiffs provided no written documentation related to those business meetings or the research conducted. Plaintiffs stayed with family for a total of seven days. They have not demonstrated that the trip was primarily business related, so the expenses incurred are not allowed.

Plaintiffs did not provide evidence of expenses incurred on their trips to Bend, Oregon and Sacramento, California. Thus, no deduction is allowed for those trips.

DECISION  TC-MD 210413N

C.      *Other Expenses*

        1.      *Cell phone*

Plaintiffs claim expenses of $1,198 for Curtis' cell phone, composed of $770 for the plan charge and $428 for the phone line. (Ptfs' Exs 4.1, 4.7.) Defendant denied Plaintiffs' cell phone expenses, explaining: "if an expense is personal in nature, then no amount is allowed as a deduction, not even a prorated amount should the item giving rise to the personal expense also be used for business purposes, because the personal use would have been incurred regardless of any business use." (Def's Ex A at 7-8.) In support of that reasoning, Defendant cited *Fausner v. Comm'r*, 413 US 838, 93 S Ct 2820, 37 L Ed 2d 996 (1973). (*See id.*) (remaining citation omitted).

In *Fausner*, taxpayer was a pilot who sought to deduct the cost of traveling by car between his home and the airport because he needed to transport his luggage. 413 US at 838. The Court held that Congress intended for taxpayers to bear the costs of commuting, so taxpayer could not deduct his commuting expenses simply because he "must carry incidentals of his occupation with him." *Id.* at 839. *Fausner* involved a personal expense – commuting – and the fact that taxpayer carried luggage with him did not change the personal nature of the expense. By contrast, a taxpayer may deduct expenses associated with the business use of a personal automobile. Indeed, the court acknowledged as such in *Fausner*. 413 US at 839 (noting a situation in which an allocation of costs may be made between personal and business expenses). The court does not read *Fausner* as precluding business deductions for a cell phone.

In determining whether and to what extent a taxpayer may deduct cell phone expenses, the court is guided by IRC section 162 (allowing ordinary and necessary business expenses) and IRC section 262 (disallowing personal expenses). *See also* IRC § 262(b) (the first telephone line

DECISION  TC-MD 210413N

to taxpayer's residence is treated as a personal expense). Courts may estimate the amount of the allowable deduction so long as it has a reasonable evidentiary basis. *Cohan*, at 643-44; *Vanicek*, at 742-43. When making an estimate, the court "make[s] as close an approximation as it can, bearing heavily if it chooses upon the taxpayer whose inexactitude is of his own making." *Cohan*, 39 F2d at 544.

Curtis was engaged in a trucking business for which he performed all tasks, including driving, scheduling, and bookkeeping. The court is satisfied that he had a business purpose for maintaining a cell phone – namely, to communicate with clients while on the road – and that he, in fact, used his cell phone for business purposes. Furthermore, Plaintiffs had another phone line for their personal residence.

The next question is how to allocate Curtis' cell phone expenses between business and personal use. Curtis testified that 89 percent of his cell phone calls were business related and provided call logs for one month to support that percentage. Curtis did not provide a work schedule or an allocation of his cell phone usage between work and nonwork hours. However, it does not appear that Curtis spent a significant amount of work time taking calls. In January 2017, he took between zero and nine calls per day. (Ptfs' Exs 4.8-4.10.) His business calls ranged from one to 16 minutes in length, with one outlier of 56 minutes. (*Id.*) Additionally, Curtis' cell phone records suggest that his phone may have been used for purposes other than calls. (*See, e.g.,* Def's Ex I at 9 (showing 1.398 GB of data usage with "estimated top activities" listed as "web & apps," "social," and "video"; "device includes Stream Pass with NBA League

/ / /

DECISION TC-MD 210413N

10

Pass"[9]).)  Curtis did not attempt explain the business purpose of those other uses, or to allocate them between business and personal.

The court looks to time usage as a reasonable method of allocation, and one followed by other courts.  *See, e.g., Tanzi v. Comm'r*, 112 TCM (CCH) 210 (2016) (taxpayers "did not establish the extent they used the cell phones for business purposes relative to total use"); *Windham v. Comm'r*, 113 TCM (CCH) 1318 (2017) (denying taxpayer's cell phone expenses because "she offered no testimony or other evidence delineating how many cell phone minutes were used for business calls, charity calls, or personal calls"); *Kellett v. Comm'r*, 123 TCM (CCH) 1327 (2022) (allocating cell phone expenses based on hours the phone was used for business versus total hours in the week).  Curtis' call log reveals that his cell phone was used for 62.5 business hours in January 2017, which supports 13 percent business use.[10]  That translates into a deduction of \$106 for Curtis' cell phone.[11]

Plaintiffs claim expenses of \$111 for Curtis' tablet.  That is the entire amount incurred with no allocation between business and personal.  (*See* Ptfs' Ex 4.1.)  Without any evidence upon which to base a reasonable allocation, the court disallows the expense.  *Vepsalainen v. Dept. of Rev.*, TC-MD 190252N, WL 832862 *5 (Or Tax M Div, Feb 19, 2020) (declining to allow deduction for home internet where taxpayers failed to make reasonable allocation).

/ / /

---

[9] The phone bill did not list a charge associated with the NBA League Pass.

[10] The court reviewed the dates and times of Curtis' business calls to determine the range of time in which business calls were made.  For instance, on January 2, he took three business calls over a 3.5-hour period from 10:27 a.m. to 1:52 p.m.  (Ptfs' Ex 4.8.)  The court finds the phone was used for business calls during a range of time totaling 62.5 hours in January 2017.  (*See* Ptfs' Exs 4.8-4.10.)  Assuming 496 waking hours in January 2017 (16 hours x 31 days), Curtis used his cell phone for business purposes 13 percent of the time, rounded.

[11] That is 0.13 x \$428.01 (Curtis' phone charges) + 0.13 x \$385 (50 percent of the plan charge).

2.    *Internet*

Plaintiffs claim $644 for internet service in 2017.  Internet service may be deducted as a utility when there is a business use of the home.  *See, e.g., Coury v. Comm'r*, 99 TCM (CCH) 1546 (2010).  Plaintiffs filed a Form 8829 reporting home office expenses, including $2,398 in utility expenses.  It is unclear whether that amount included internet service.  The burden falls on Plaintiffs to show that internet expenses were not included in their home office utilities.  *See Allen v. Comm'r*, 97 TCM (CCH) 1522 (2009) (disallowing internet expenses because taxpayers "have not established that the claimed utility expenses have not been included in the home office utility expense deduction allowed").

Even if the court assumes that Plaintiffs' home internet expenses were not claimed on their Form 8829, Plaintiffs have not provided any basis upon which the court can estimate a reasonable allocation between business and personal use.  The internet expenses are disallowed.

## III.  CONCLUSION

Upon careful consideration, the court allows Plaintiffs the following deductions in addition to amounts allowed by Defendant: $6,518 for deprecation of the Crew Cab; $619 for fuel for the Crew Cab; $335 for campground fees; and $106 for cell phone expenses.  The other amounts claimed are denied.  Now, therefore,

IT IS THE DECISION OF THIS COURT that Plaintiffs' appeal is granted in part and denied in part.  For the 2017 tax year, Plaintiffs are allowed business deductions of $6,518 for deprecation of the Crew Cab; $619 for fuel for the Crew Cab; $335 for campground fees; and $106 for cell phone expenses.  Plaintiffs' claimed deductions for the motorhome, tablet, and home internet are denied.

/ / /

DECISION  TC-MD 210413N

IT IS FURTHER DECIDED that, as stipulated by the parties, Defendant's adjustment of $11,175 to other income is reversed, and Plaintiffs' supplies expense of $101,871 is allowed.

IT IS FURTHER DECIDED that, as stipulated by the parties, neither party is awarded costs and disbursements.

_____

*If you want to appeal this Decision, file a complaint in the Regular Division of the Oregon Tax Court, by <u>mailing</u> to: 1163 State Street, Salem, OR 97301-2563; or by <u>hand delivery</u> to: Fourth Floor, 1241 State Street, Salem, OR.*

*Your complaint must be submitted within <u>60</u> days after the date of this Decision or this Decision cannot be changed.  TCR-MD 19 B.*

*This document was signed by Presiding Magistrate Boomer and entered on September 27, 2022.*

DECISION  TC-MD 210413N